UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JoAnne L.,[1] <br><br> Plaintiff, <br><br> v. <br><br> Commissioner of Social Security, <br><br> Defendant. | Case No. 2:22-cv-01399-BNW-JCM <br><br> **REPORT AND RECOMMENDATION** <br> **re ECF Nos. 28 & 29** |

This case involves review of an administrative action by the Commissioner of Social Security denying Plaintiff JoAnne L.'s application for disability insurance benefits under Title II of the Social Security Act. The Court reviewed Plaintiff's motion for remand (ECF No. 28), the Commissioner's cross-motion to affirm and response (ECF Nos. 29, 30), and Plaintiff's reply (ECF No. 31). For the reasons discussed below, the Court recommends that Plaintiff's motion be granted and that this matter be remanded for further proceedings.

**I.      Background**

    **1.      Procedural History**

On December 6, 2019, Plaintiff applied for disability insurance benefits under Title II of the Social Security Act, alleging an onset date of September 26, 2018. ECF No. 21-1[2] at 177–78. Plaintiff's claim was denied initially and on reconsideration. *Id*. at 112–16; 118–23.

A telephonic hearing was held before Administrative Law Judge ("ALJ") Jeannine Lesperance on September 1, 2021. *Id*. at 38–69. On September 17, 2021, ALJ Lesperance issued a decision finding that Plaintiff was not disabled. *Id*. at 17–33. On July 5, 2022, the Appeals

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.
[2] ECF No. 21 refers to the Administrative Record in this matter which, due to COVID-19, was electronically filed. (Notice of Electronic Filing (ECF No. 21)). All citations to the Administrative Record will use the CM/ECF page numbers.

Council denied review. *Id.* at 5–10. On August 29, 2022, Plaintiff commenced this action for judicial review under 42 U.S.C. § 405(g). *See* IFP App. (ECF No. 1).

**II.     Discussion**

    **1.     Standard of Review**

Administrative decisions in Social Security disability benefits cases are reviewed under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which [s]he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See id.*; *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004).

When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue before the court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence. It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are not sufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.*

### 2. Disability Evaluation Process and the ALJ Decision

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Moreover, the individual must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that she can make a finding of disability or non-disability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

1    Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If the individual is engaged in SGA, then a finding of not disabled is made. If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. *Id.* § 404.1520(a)(4)(ii). If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. § 404.1520(a)(4)(iii). If the individual's impairment or combination of impairments meets or equals the criteria of a listing and the duration requirement, then a finding of disabled is made. *Id*. § 404.1520(d). Otherwise, the analysis proceeds to step four.

However, before moving to step four, the ALJ must first determine the individual's residual functional capacity ("RFC"), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1560; *see also* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1545. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. § 404.1520(a)(4)(iv). PRW means work performed

either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years. In addition, the work must have lasted long enough for the individual to learn the job and performed a SGA. If the individual has the RFC to perform her past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual can do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If she can do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence demonstrating that other work exists in significant numbers in the economy that the individual can do. *Yuckert*, 482 U.S. at 141–42.

Here, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a). ECF No. 21-1 at 22–33.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 26, 2018, the alleged onset date. *Id*. at 22.

At step two, the ALJ concluded that Plaintiff had the following severe impairments: left hand osteoarthritis; lumbar degenerative disc disease, with radiculopathy, status post-spinal surgeries in August 2016 and October 2017; obesity; right knee osteoarthritis with degenerative joint disease; and status post-left total knee replacement in 2005. *Id*.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 26.

Before moving to step four, the ALJ concluded that Plaintiff had the RFC to perform "sedentary" work with the following limitations:

> she could occasionally push, pull, or operate foot controls with the bilateral lower extremities. The claimant could frequently perform handling and fine-fingering tasks with the left upper extremity, and occasionally climb ramps and stairs, balance, stoop, and crouch. The claimant could not kneel, crawl, climb ladders, ropes, or scaffolds, or work at

unprotected heights, and could tolerate occasional but not concentrated exposure to wetness, extreme cold, or vibration. The claimant needs a single point cane for ambulating on uneven terrain and for distances over 15 feet.

*Id.* at 27.

At step four, the ALJ found that Plaintiff can perform past relevant work as an office administrative clerk.[3] *Id.* at 31. The ALJ then concluded that Plaintiff was not under a disability at any time since September 26, 2018. *Id.* at 32.

### 3. Analysis

#### A. Whether the ALJ erred in evaluating the opinion evidence

Plaintiff moves the Court to remand for benefits or, in the alternative, remand for further proceedings on several grounds. ECF No. 28-1 at 8.

First, she argues that the ALJ erred in evaluating the opinion evidence, namely the opinion of Dr. Dale H. Van Kirk, M.D. *Compare* ECF No. 28-1 at 13–17 *with* ECF No. 29 at 5–7.

Because Plaintiff applied for disability benefits after March 27, 2017, she is subject to the new set of regulations for evaluating medical opinion evidence. *See* 20 C.F.R. § 404.1520c. Under these new regulations,

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources . . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency . . . .

20 C.F.R. § 405.1520c(a). Additionally, under the new regulations, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). In fact, the ALJ "must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id.* § 404.1520c(b)(2)." *Id.* Supportability means that "[t]he more relevant the objective medical evidence and supporting

---

[3] The ALJ also found, in the alternative, that Plaintiff could perform jobs that exist in significant numbers in the national economy. ECF No. 21-1 at 31–32.

explanations presented by a medical source are to support his or her medical opinion[ ] . . . the more persuasive the medical opinion[ ] . . . will be." 20 C.F.R. § 404.1520c(c)(1). Likewise, "[t]he more consistent a medical opinion[ ] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the opinion[ ] . . . will be." 20 C.F.R. § 404.1520c(c)(2).

Here, the ALJ considered the opinion of consultative orthopedist Dr. Van Kirk and found it not entirely persuasive:

> Generally good reliance is also accorded to the eroded sedentary RFC assessments by the consultative orthopedist Dr. Van Kirk, M.D. on July 26, 2020, based on positive examination findings including a moderate limp with use of a cane, some subjective hypoesthesia of the left ankle and foot and absent reflexes, but otherwise grossly full (5/5) motor strength including normal grip strength (Ex. 8F). However, I reject the specific limitation of no postural activities, which if accurate, would mean that the claimant could not crouch or stoop even to drive, which is inconsistent with her activities as noted in the record. Also, if the claimant can sit, she must be able to stoop to at least the extent necessary to change positions from standing to sitting.

ECF No. 21-1 at 28. Dr. Van Kirk saw Plaintiff for one visit on July 26, 2020, where he completed a "comprehensive orthopedic evaluation." *Id.* at 804–10. The examining physician opined, as relevant here, that Plaintiff "was limited to no postural activities, limited because of chronic recurrent pain in her back, as well as her bilateral knee pain." *Id.* at 808.

Although the ALJ "generally" relied on Dr. Van Kirk's "eroded sedentary RFC assessments[,]" the ALJ "reject[ed] the specific limitation of no postural activities[.]" *Id*. at 28. The ALJ reasoned that such a limitation, which "would mean that [Plaintiff] could not crouch or stoop even to drive," is "inconsistent with [Plaintiff's] activities as noted in the record" as well as her ability to sit. *Id*. According to the ALJ, "if the claimant can sit, she must be able to stoop to at least the extent necessary to change positions from standing to sitting." *Id*.

As noted above, the ALJ has a duty to "explain how [she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision." 20 C.F.R. § 404.1520c(b)(2). Moreover, the ALJ's consistency and supportability findings must be supported by substantial evidence. *See Woods*, 32 F.4th at 792. In rejecting Dr. Van Kirk's opinion regarding Plaintiff's postural limitations, the

ALJ addressed the consistency factor but not supportability (i.e., how the consulting doctor's opinion was or was not supported). This was legal error. *See id.* ("Even under the new regulations, an ALJ cannot reject an examining . . . doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate . . . how persuasive it finds all of the medical opinions from each doctor or other source, and explain how [it] considered the supportability and consistency factors in reaching these findings.") (internal quotations and citations omitted).

Additionally, the ALJ's reasoning regarding the inconsistency between Plaintiff's ability to sit and drive and Dr. Van Kirk's postural limitations is not persuasive, as it is not supported by substantial evidence. Plaintiff's ability to sit and to transition from a standing to sitting position does not necessarily undermine Dr. Van Kirk's finding that Plaintiff cannot perform any postural activities in a full-time work setting. Dr. Van Kirk observed that Plaintiff can "ge[t] up and out of the chair" but "needs assistance getting up and down out of the chair." ECF No. 21-1 at 806. He also concluded that Plaintiff could only squat one-third of the way due to pain in her back and knees and could not bend over all the way to the floor. *Id.* at 806–07.

Further, Plaintiff's ability to sit and drive once or twice a week does not conflict with Dr. Van Kirk's opinion that Plaintiff should not perform any postural activities. This is because a claimant's ability to engage in certain activities does not necessarily indicate that the claimant will be able to do so in a work environment. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability.") (internal quotations and citation omitted). The record shows that, at various points, Plaintiff was "able to get up and down stairs ok." ECF No. 21-1 at 461. But it also reveals that Plaintiff can independently perform functional position changes but doing so is "very labored[,]" *id.* at 432, and Plaintiff repeatedly reported that she has difficulty in performing a sit-to-stand transfer. *See, e.g.,* ECF No. 21-1 at 388 (physical therapy progress note identifying sit-to-stand transfer as a "presenting problem"); 395 (physical therapy progress note explaining that one of Plaintiff's "chief complaints" is "Sit to Stand Transfer"); 406 (physical therapy note noting the sit-to-stand

transfer as a chief complaint). The ALJ did not address the evidence from the record showing Plaintiff's difficulty with functional position changes or how this evidence was inconsistent with Dr. Van Kirk's opinions.

In short, because the ALJ failed to adequately assess the supportability or consistency factors with regard to Dr. Van Kirk's opinion, the ALJ erred in finding the doctor's opinion not entirely persuasive. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (holding that the agency must "set forth the reasoning behind its decisions in a way that allows for meaningful review. A clear statement of the agency's reasoning is necessary because we can affirm the agency's decision to deny benefits only on the grounds invoked by the agency."). And because this error is consequential "to the ultimate nondisability determination," it is not harmless. *Stout*, 454 F.3d at 1055–56.

**B.     Whether the ALJ provided specific, clear, and convincing reasons to discount Plaintiff's pain and symptom testimony**

The parties dispute whether the ALJ provided specific, clear, and convincing reasons in discounting Plaintiff's subjective symptom testimony. *Compare* ECF No. 28-1 at 18–23 *with* ECF No. 29 at 8–11.

In determining whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ engages in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (citation and quotation omitted). "The claimant is not required to show that her impairment 'could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). If the claimant satisfies the first step of the analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of their symptoms "only by offering specific, clear and convincing reasons for doing so." *Id.* (citation and quotation omitted). *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014)

(citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why they discounted the claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). That said, if the ALJ's credibility finding is supported by substantial evidence in the record, the Court may not engage in second-guessing. *Thomas*, 278 F.3d at 959.

Here, the ALJ found Plaintiff's impairments could reasonably be expected to cause the "at least some of the alleged symptoms[.] ECF No. 21-1 at 31. However, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision (SSR 16-3p)." *Id.* The ALJ cited to a few reasons, including Plaintiff's activities of daily living, conservative treatment, and inconsistencies with the objective medical record, to discount her symptom testimony. *Id.* The Court will address each in turn.

### 1. Activities of daily living

The ALJ discounted Plaintiff's pain and symptom testimony because of Plaintiff's activities of daily living:

> the great many references cited above concerning her active role in caring for her grandchildren, to the point of feeling that she was being taken advantage of by her daughter (Ex. 5F, p. 6), while doing home exercise of taking thousands of stair steps daily (Ex.'s 6F, p. 90 and 13F, p. 6) yet sometimes reporting as low as level '2' of 10 pain to her chiropractor (Ex. 10F, p. 28), and walking her dog for half a mile roundtrip, "without pain" (Ex. 6F, p. 87) are markedly inconsistent with the claimant's subjective complaints and related limitations as alleged.

ECF No. 21-1 at 31. The ALJ added that Plaintiff's ability to take care of her grandchildren, including taking them to school and sports activities; walk her dog; take the stairs; and walk around her apartment complex are inconsistent with her testimony that she "need[s] to lie down most of the day" and is unable "to do much cooking, cleaning, or shopping." *Id*. at 30.

1  "Engaging in daily activities that are incompatible with the severity of symptoms alleged
2  can support an adverse credibility determination." *Ghanim*, 763 F.3d at 1165 (citations omitted).
3  Here, however, the ALJ appeared to have cherry-picked evidence showing inconsistency
4  between Plaintiff's testimony and her activities of daily living. For example, the ALJ found that
5  Plaintiff could walk, walk her dog, climb stairs, and drive her teenage grandchildren. However,
6  Plaintiff also complained of severe pain as a result of performing these activities, namely walking
7  and climbing stairs. *See, e.g.,* ECF No. 2101 at 432 (Plaintiff stated that she walks a lot and has
8  been going up and down three flights of stair eight times a day, yet she complained of back and
9  leg pain with numbness and tingling and a constant pain level of 8–9); *id.* at 500 (pain is
10 aggravated by Plaintiff's routine); *id.* at 502 (taking the stairs increases Plaintiff's pain); *id.* at 534
11 (pain is worsened by standing and walking). Moreover, the record shows several references to
12 Plaintiff receiving stairs training as recently as January 2020 because she "shows poor safety with
13 stairs negotiation and non-alternating pattern." *See, e.g., id.* at 427–28. At the same time, Plaintiff
14 testified that when she took care her of her grandchildren, she would spend "much of the day"
15 lying down while they were at school. *Id.* at 54. She further testified that a "major reason" for
16 moving away from her grandchildren to live with her ex-husband was that he lived in a one-story
17 home. *Id.* at 51. Also relevant is that ALJ failed to note that Plaintiff qualified her ability to
18 perform daily activities, testifying, for example, that while she can drive and has a driver's
19 license, she would only drive short distances ("right down the street . . . and right back") and that
20 her daughter or friend would drive her to medical appointments. *Id.* at 45.
21 Additionally, the ALJ found that Plaintiff could do "much cooking, cleaning, or
22 shopping." ECF No. 21-1 at 30. However, Plaintiff testified that her daughter would grocery shop
23 prior to her work travels, and she told Dr. Van Kirk that her daughter's male friend would do
24 most of the household chores, though she would help. *Id.* at 54, 805.
25 Even considering the ALJ's cited activities of daily living, the Ninth Circuit has advised
26 that "ALJs must be especially cautious in concluding that daily activities are inconsistent with
27 testimony about pain, because impairments that would unquestionably preclude work and all the
28

pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016; *Albertson v. Colvin*, 659 Fed. App'x 372, 374 (9th Cir. 2016) (holding the claimant's ability to perform basic household chores and occasionally run errands was not enough to discredit her pain testimony). Further, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citations omitted). Thus, Plaintiff's ability to perform daily activities is not dispositive of her ability to work eight hours a day, five days a week.

Activities of daily living "may also be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of h[er] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007) (internal quotation marks and citation omitted). However, there is no indication here that the limited activities Plaintiff engaged in comprised a "substantial" portion of her day or were "transferrable" to a work environment. *See Smolen*, 80 F.3d at 1284 n.7 (recognizing that "many home activities may not be easily transferrable to a work environment"). This is because the ALJ failed to draw a connection between Plaintiff's reported activities of daily living, which included driving her teenage grandchildren to school and activities, and the ability to sustain work. The Ninth Circuit has made clear that "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Thus, for the reasons discussed above, the Court finds that the ALJ failed to provide a sufficient basis to find Plaintiff's allegations not entirely credible.

**2. Plaintiff's conservative treatment**

The ALJ discounted Plaintiff's symptom testimony because it was inconsistent with the conservative treatment she obtained. ECF No. 21-1 at 28–29.

"[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (quoting *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir. 1995)).

Here, the ALJ discounted Plaintiff's subjective testimony relating to her non-severe mental impairments because her treatment has "only" been "conservative/limited . . . without significant other interventions."[4] ECF No. 21-1 at 28; *see also id.* at 29 (noting that "the claimant's treatment has remained conservative and her complaints tended to be exclusively situational . . ."). According to the ALJ, Plaintiff "declined additional specialist psychiatric referrals when offered." *Id*. at 28. However, the record shows that Plaintiff had been referred to group therapy but did not attend because of "low energy/motivation." *Id.* at 417. The Ninth Circuit has "particularly criticized the use of a lack of treatment to reject mental complaints . . . because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1299–1300 (9th Cir. 1999) (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)). As such, this is not a sufficient basis to discount Plaintiff's testimony.

Additionally, it is not clear how Plaintiff's treatment for her physical impairments has been conservative, as the ALJ did not provide an explanation, even though she acknowledged that Plaintiff underwent two surgical fusions and a left total knee replacement (before the alleged onset date). *Id*. at 29–30 ("Physically, the objective conditions are fairly severe, including the claimant's lumbar spine condition that had resulted in surgical fusions in 2016 and 2017, and the remote (2005) left total knee replacement procedure with residual arthritis for which she uses a cane."). With respect to Plaintiff's 2016 surgical fusion, the medical records state that Plaintiff "opted for surgical intervention after conservative treatment did not prove beneficial." *Id*. at 1248. Additionally, a physical therapy progress note as well as Dr. Van Kirk's report state that Plaintiff "initially tried injections" before she had "her second back surgery." *Id.* at 388, 805 (Plaintiff "did try injections into the spine area prior to her most recent surgery."); *see also Gilliland v. Saul*, 821

---

[4] ALJ also cited to Plaintiff's conservative treatment as a reason to find unpersuasive the limitations provided by Plaintiff's chiropractor. ECF No. 21-1 at 28.

Fed. App'x 798, 799 (9th Cir. 2020) (finding treatment consisting of pain medications and injections was not conservative).

Even if the Court were to consider the ALJ's step-two findings where she concludes that "[f]or her pain symptoms, the claimant continued to receive only conservative treatment, e.g., pain medication and chiropractic care appointments basically, with home exercises (Ex. 13F)[,]" this also is an insufficient reason to discount Plaintiff's pain and symptom testimony. *Id*. at 26. This is because the ALJ had a duty to consider whether more aggressive treatments were available and appropriate:

> While evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of an impairment, *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007), an ALJ errs in relying on conservative treatment if the record does not reflect that more aggressive treatment options are appropriate or available."

*Cortes v. Colvin*, No. 2:15-CV-2277 (GJS), 2016 WL 1192638, at *4 (C.D. Cal. Mar. 28, 2016), *judgment entered*, No. 2:15-CV-2277-GJS, 2016 WL 1211363 (C.D. Cal. Mar. 28, 2016) (quoting *Lapeirre-Gutt v. Astrue*, 382 Fed. App'x 662, 664 (9th Cir. 2010)).

### 3. Objective medical evidence

The ALJ also discounted Plaintiff's subjective symptom testimony based on inconsistencies with the objective medical record. ECF No. 21-1 at 31. Inconsistency with the medical record can provide a clear and convincing basis for discounting a claimant's symptoms, so long as it is not the sole basis for doing so. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). Because the Court found that the ALJ's other reasons were not specific, clear, and convincing, this remaining reason cannot be a sufficient basis for discounting Plaintiff's symptom testimony. *See id.*

### 4. Whether the ALJ's error is harmless

Having found that the ALJ erred by not providing specific, clear, and convincing reasons to discount Plaintiff's subjective symptom testimony, the Court must next determine whether this error is harmless.

An error is harmless only if it is "inconsequential to the ultimate nondisability determination" and if the court "can confidently conclude that no reasonable ALJ, when [not

making the same error] could have reached a different disability determination." *Stout*, 454 F.3d at 1055–56.

Here, because the ALJ did not provide enough "reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence," the Court cannot treat the error as harmless. *Treichler v. Comm'r of Soc. Sec. Admin.,* 775 F.3d 1090, 1103 (9th Cir. 2014); *see also Brown-Hunter*, 806 F.3d at 494–95. Moreover, because another ALJ crediting Plaintiff's symptom testimony could have reached a different disability determination, this error was not harmless.

### C. Plaintiff's remaining issues

Having found that remand is warranted, the Court declines to address Plaintiff's remaining issues. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand.").

### D. Whether the Court should remand for immediate payment of benefits

Plaintiff argues that the case should be remanded for immediate payment of benefits or, in the alternative, for further proceedings. ECF No. 28-1 at 7–8. The Commissioner submits that "there is no clear basis for granting an award of benefits." ECF No. 29 at 15.

To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Garrison*, 759 F.3d at 1020; *see also Treichler,* 775 F.3d at 1100–01 ("credit-as-true" rule has three steps). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020. Second, the record must be fully developed, and further administrative proceedings would serve no useful purpose. *Id*. Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled. *Id*. To remand for an award of benefits, each part must be satisfied. *Id*.; *see also Treichler*, 775 F.3d at 1101 (explaining that when all three elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule").

Here, the ALJ failed to provide legally sufficient reasons, supported by substantial evidence, for rejecting Dr. Van Kirk's medical opinion evidence as well as Plaintiff's pain and

symptom testimony. However, the Court finds further administrative proceedings would be useful and that it is unclear whether the ALJ would be required to find the claimant disabled if the case is remanded and the improperly discredited evidence is credited as true. *See Garrison*, 759 F.3d at 1020; *see also Treichler*, 775 F.3d at 1101 (explaining that the "ordinary remand rule" is the proper course except in rare circumstances).

**IV.   Conclusion**

**IT IS THEREFORE RECOMMENDED** that Plaintiff's Motion to Remand (ECF No. 28) be GRANTED consistent with this Order.

**IT IS FURTHER RECOMMENDED** that the Commissioner's Cross-Motion to Affirm and Response to Plaintiff's Motion for Reversal and/or Remand (ECF Nos. 29, 30) be DENIED.

**IT IS FURTHER RECOMMENDED** that, on remand, the ALJ reconsider Dr. Van Kirk's opinion; Plaintiff's subjective symptom testimony; and any other part of the decision as necessary in light of the updated record on remand, including Plaintiff's RFC and any hypothetical given to the vocational expert.

**IT IS FURTHER RECOMMENDED** that the Clerk of Court enter judgment in favor of Plaintiff and close this case.

## NOTICE

This report and recommendation is submitted to the United States district judge assigned to this case under 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: September 13, 2023.

BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE